Village of Coffeen v. Lang.

---

## Village of Coffeen v. Permelia H. Lang.

1. SIDEWALKS—*Right to Use, Although Known to be Out of Repair.*—Notwithstanding the fact that a person has knowledge that a sidewalk is out of repair, he still has the right to travel upon it, if, in so doing, and under all circumstances, he exercises the care of a reasonably prudent person.

2. CITIES AND VILLAGES—*Notice of Dangerous Sidewalks.*—The question as to whether the officials of a city or village would have known of dangerous places in sidewalks, if they had exercised proper vigilance, is one of fact for the determination of the jury.

3. EVIDENCE—*Opinion of Witnesses—When Immaterial.*—After a witness had testified that he had frequently passed the place in question on the sidewalk, and had seen nothing wrong, what he thought as to whether he would have noticed the defect, if there, is wholly immaterial, and to ask for his opinion on the point is to violate a general principle in the law of evidence.

4. INSTRUCTIONS—*Married Woman's Loss of Time, etc.*—Conceding that the amount lost by reason of a married woman's inability to perform her usual duties during her illness resulting from an injury can not be recovered by her, yet an instruction which states that the jury may take into consideration her loss of time, and her pain and suffering, etc., is not substantially objectionable, especially where the damages assessed are not excessive.

**Action,** for personal injuries. Appeal from the Circuit Court of Montgomery County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed November 21, 1896.

LANE & COOPER, attorneys for appellant.

HOWETT & JETT, attorneys for appellee.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment for $400 in favor of the appellee, in an action on the case, for injuries sustained by reason of a defective sidewalk.

The point first made in the brief of appellant is that the appellee did not exercise due care. She was carrying her child on one arm and had a small valise or satchel in the other hand. As she approached the defective place in the walk, her cape blew in the child's face, when it began to cry, and while she was giving it the necessary attention she stepped inadvertently on the end of the rotten board which was laid lengthwise, her shoe was caught by nails protruding from the stringer, and she was thrown down in such a way as to cause the injury complained of. She admits that she had noticed the condition of the walk when passing there on previous occasions. As was said in Village of Cullom v. Justice, 59 App. 304, "Notwithstanding this fact, she would have the right to travel on the sidewalk, if, in doing so and under all the circumstances, she was exercising the care of a reasonably prudent person, and this, like every other question of fact, was for the jury. This is a principle so well established that no authorities need be cited." S. C., 161 Ill. 372; Village of Clayton v. Brooks, 150 Ill. 77. The cases referred to by appellant are not necessarily in point here, for the reason that the facts are not identical. The appellee may well urge as an important circumstance, that her attention was necessarily diverted to the child, and while she was properly caring for it, the defective point was reached and she was hurt. It was for the jury to say whether the explanation she offered was credible and sufficient. We can not hold they erred in so accepting it. The next point urged is that the defect was not such as to render the village liable. It was enough to cause the injury in question. It was described as being a decayed

place at the end of the board where it was fastened to the stringer four to six inches in width—large enough to admit a human foot; the board would give down when stepped on, and there were protruding nails which caught the plaintiff's foot and contributed to produce the fall. Other persons had suffered inconvenience there—one of them said she had her foot caught there, but did not happen to fall; another stumbled there, but did not fall; another was tripped and did fall, cutting the toe of his shoe on the nails. Other witnesses noticed the defect.

Quite a number of witnesses called by the appellant, frequently passed there and did not notice it. Still it was there, and had been for two months or more, and proved to be dangerous. It was for the jury to say whether the corporate officials would have known of it had they exercised proper vigilance, and we find no occasion to interfere with their conclusion in that respect.

Complaint is made that the court would not permit appellant to ask a witness whether he would have noticed the defect if it had been there. In view of what the witness had already stated as to his means of knowledge and his opportunity for observation, this question would have elicited his opinion merely, and the remark of the court in ruling on the point that such evidence was without weight, was, as we think, quite correct in view of the testimony. The witness had told all he knew; that is, that he had frequently passed there and had seen nothing wrong. What he thought as to whether he would have noticed the defect, if there, was wholly immaterial, and to ask for his opinion on the point was to violate a general principle in the law of evidence.

The case relied upon by appellant—Penn. Co. v. Boylon, 104 Ill. 595—was reversed because the trial court refused to permit several questions to be asked, one of which was in form much like the question excluded here, but the aspect of the testimony already given was peculiar and was especially so because of one clause of an answer just made by the witness. The court ruled, therefore, that under the cir-

cumstances the question should have been permitted. It is not clear that the judgment would have been reversed for that cause alone. Other cases may be found where similar cases have been approved, but it is believed that in every instance the circumstances were exceptional and that there was some special reason for deviating from the general rule.

As already observed in the case at bar, the witness had testified to all he knew on the point, had stated his opportunities for observation and it was for the jury to draw their own inference.

This objection must be overruled.

It is urged the court erred in giving instructions asked by plaintiff as to the damages.

The third and fourth were general; that if the verdict was for the plaintiff the damages should be assessed at such amount as the jury might believe from the evidence she was entitled to and that it was not necessary that any witness should have testified to any certain amount as the damages sustained, to which no valid objection is perceived.

The fifth was as follows :

" The court instructs the jury that if they shall find the defendant guilty they may then assess the plaintiff's damages at such sum as the evidence may show, if anything, which she has actually sustained as the direct or proximate result of her injury, and the jury may take into consideration plaintiff's loss of time and her pain and suffering, if such are shown by the evidence, and if the jury shall believe from the evidence that the plaintiff is permanently injured and is incurable, they may take that into consideration in assessing the plaintiff's damages."

The point made on this instruction is that it allows the plaintiff to recover for her loss of time and it is insisted on the authority of City of Bloomington v. Annett, 16 Brad. 199, that for time lost by the plaintiff her husband only could recover. The instruction, condemned in that case, stated as elements of damages the expense incurred during the illness of the plaintiff (a married woman living with her hus-

Village of Coffeen v. Lang.

band) including bills for nursing and medical services, and it was held erroneous, as was also the action of the trial court in admitting proof of what the services of the plaintiff as a housekeeper were reasonably worth.

In this case there was no proof of that sort, but it was shown that plaintiff was confined to her bed for seven or eight weeks.

The expression "plaintiff's loss of time" in connection with the other items, of pain and suffering, would perhaps be understood as referring to the length of suffering and her personal inconvenience thereby sustained, and not to the value of her services during that time, as to which there was no proof.

Hence, conceding the point that the amount lost by reason of her inability to perform her usual duties during her illness was not recoverable by her, as to which no opinion is expressed, the instruction is not substantially objectionable. On a broader ground, however, the objection may be overruled, that is, the damages are not excessive.

The plaintiff certainly suffered very severely as a direct consequence of the fall. She claimed and proved by medical testimony that the left fibula was broken, that the thigh, spinal cord and left shoulder were bruised and much affected; that she also suffered another serious injury, peculiar to her sex, and that she endured great pain for many weeks. True, some medical testimony was produced to the effect that there was no fracture and that all the other troubles were much magnified; in other words, that the trouble was in the main hysteria; yet hysteria is a most distressing ailment when acute and protracted, and if brought on by the injury in question, was proper to be considered in assessing her damages. In any view that can be taken of the evidence we are constrained to say that the sum awarded is clearly within the range of the proof, indeed, is a very moderate allowance, and the supposed fault in the instructions on that subject ought not to work a reversal. St. L., A. & C. R. R. Co. v. Odum, 52 Ill. App. 519; S. C., 156 Ill. 78.

No other objections are urged, and the judgment will be affirmed.