## John D. Casey, Administrator, Appellant, v. Sawyer Bis= cuit Company, Appellee.

## Gen. No. 15,809.

1. ANIMALS—*what competent as to knowledge of viciousness.* A statement of an employe of the owner having apparent authority to hire drivers, which tends to establish knowledge of viciousness, is competent. *Held,* however, that the exclusion of such statement was harmless error as the same was merely cumulative of other testimony given.

2. EVIDENCE—*as to what opinion competent.* It is competent to admit an opinion as to the effect of suddenly slapping a horse on the back while standing in a stall, such matter not being one of common knowledge and experience.

3. EVIDENCE—*when officer of corporation competent.* Where the adverse party sues in a representative capacity an officer of a corporation who is not also a stockholder is competent on behalf of the corporation.

4. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* The doctrine of assumed risk has no place where the relation of master and servant does not exist.

5. MASTER AND SERVANT—*burden to establish non-assumption of risk.* The burden is upon the servant or his representative to show that the risk which resulted in the injury was not assumed.

6. TRIAL—*when incident will not effect reversal.* An incident of a trial claimed as prejudicial will not reverse where at the time of its occurrence no complaint was made with respect thereto.

7. NEW TRIAL—*when newly discovered evidence does not require.* A party is not entitled to a new trial on the ground of newly discovered evidence if during the trial he knew of the absence of some of his witnesses and refused an opportunity then offered to continue the case.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed October 4, 1911.

CUNNINGHAM, CUNNINGHAM & QUINLAN, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is a suit by appellant against appellee to recover damages for wrongfully causing the death of appellant's intestate, Albert Yonkers. A trial by jury resulted in a verdict finding appellant not guilty and judgment upon the verdict.

The declaration contains three counts. The first count alleges that appellee kept a mare in its stables, which mare was known to appellee, or might by the exercise of ordinary care have been known, to be vicious and dangerous; that the decedent was employed by appellee as a hostler and appellee negligently failed to inform him of the vicious habits of said mare; that while the decedent was discharging his duties as a hostler and was using due care for his own safety, he was kicked by said mare and thereby so seriously injured that he died, etc. The second count alleges a duty on the part of appellee to provide a safe place in which the decedent could perform the duties of his employment with safety, and "to provide safe appliances and safe horses to be fed and cared for" by him; that appellee failed to perform said duties, but negligently used in its business a vicious and dangerous mare, which was known, or by reasonable diligence could have

been known, to appellee to be a kicker, and negligently failed to inform the decedent of the vicious habits of said mare; that while the decedent in the line of his employment and in the exercise of due care for his own safety, and "while in ignorance of any danger in said stables" was passing said mare, he was kicked by said mare and thereby so seriously injured that he died, etc. The third count alleges substantially the same facts set forth in the first count, and further alleges a duty on the part of appellee to adopt measures to prevent the said mare from kicking persons, and to cease to use said mare in its wagons and in its business.

The only uncontroverted material facts in the record are that the mare in question belonged to appellee; that she was kept with other truck horses in the stable of appellee on Center avenue; that in the same stable appellee kept other horses known as "cracker wagon horses;" that one John Kuble was employed by appellee as "barn boss" under an arrangement whereby appellee allowed him a certain gross sum per week as wages for himself and the hostlers hired by him to work in the stable; that on June 28, 1907, while the decedent was employed in said stable as a hostler for the "cracker wagon horses," he was kicked by said mare, and thereby so seriously injured that he died. The evidence bearing upon the other material issues in the case is in hopeless conflict. The testimony of the witnesses called on behalf of appellant tends to show that the mare was possessed of a most vicious disposition, which she habitually manifested by kicking whenever she was hitched or unhitched, or was approached in her stall, or was driven single or double, and that appellee had both constructive and actual notice of her said disposition and habits; that upon the occasion he was injured the decedent had only been employed in the stable three days, although he had been employed in the same stable as a hostler on one or more previous

occasions; that at the time the decedent was injured the mare had run into the stall before her bridle had been removed, and decedent said to one Culp, "You ought to take it off," to which Culp replied, "I aint going to, you can take it off if you like;" that decedent then took or attempted to take off the bridle, and while doing so was kicked.

The testimony of the witnesses called on behalf of appellee tends to show that the mare in question was quiet and easily handled; that at the time he was injured decedent had been in the employment of appellee for three weeks as a hostler caring for the "cracker wagon horses;" that it was part of his duty to care for the truck horses; that the decedent had been employed in the same barn as a hostler on previous occasions; that upon the occasion in question the decedent while passing the stall in which the mare was kept, slapped her suddenly and without any warning upon her rump, whereupon she kicked him; that if he was kicked under the circumstances detailed by appellant's witness, Culp, the decedent was a mere volunteer, as he was not expected or required to care for the truck horses. The cross-examination of the witness Culp discloses that upon a previous trial of the case he testified that when the decedent asked him why he did not take the bridle off the mare, he replied: "I know the horse, I drove him a day or so, he is liable to kick me. I wont take the chance. You can take it off if you wish."

In this state of the proof the verdict was not unwarranted, and should not be set aside unless the record discloses errors of law, which were prejudicial to appellant.

It is urged that the court improperly permitted appellee to show that the mare was docile during the period subsequent to the time when the decedent was injured, and before she was sold by appellee. We are unable to find any such evidence in the record, but on

Casey v. Sawyer Biscuit Co., 163 Ill. App. 145.

the contrary the record discloses that the trial court ruled such evidence offered by appellee to be incompetent. It does appear that the mare was used by appellee subsequent to the time she kicked the decedent, and that when she was sold she was "heavy," but admission of this evidence did not constitute the error complained of.

It is insisted that the court erred in excluding a statement alleged to have been made by Corcoran, a shipping clerk employed by the appellee, to McNamara, one of the drivers, who had been hired by Corcoran to drive a team, that he should be careful of the black mare, as she kicked. Corcoran, having apparent authority to hire the drivers, his alleged statement to McNamara was competent and should have been admitted, but in view of the fact that the evidence, if admitted, would have been merely cumulative of much other like evidence introduced by appellant tending to show actual knowledge by appellee's "barn boss" of the disposition of the mare to kick, we do not think appellant was injured by its exclusion. Upon that issue the jury evidently either did not believe the testimony of appellant's witnesses, or in view of the other issues involved, did not consider it as controlling.

The court did not err in permitting appellee's "barn boss," Kuble, to give his opinion, as to the effect of suddenly slapping a horse on the back while standing in a stall. The witness had shown himself to have had long experience in the care of horses, and the subject-matter of the inquiry was not necessarily one of common knowledge and experience.

During the trial counsel for appellee offered to show what amount of money it had paid to the widow of the decedent "for the burial," etc. Notwithstanding an objection to the admission of such evidence was sustained by the court it is claimed that the mere offer was prejudicial to appellant. In view of the fact that the verdict of the jury absolved appellee from any liability

we are unable to perceive how appellant could have been harmed by the offer, as he might have been if damages had been awarded which it was claimed were inadequate.

The twelfth, thirteenth and fourteenth instructions, given at the instance of appellee, relate to the doctrine of assumed risk, and are substantially correct statements of the law upon that subject. The doctrine of assumed risk has no place where the relation of master and servant does not exist, and the cases cited by counsel for appellant in support of their objections to the instructions, are wholly inapplicable. The cases cited are City of Flora v. Naney, 136 Ill. 45, and City of Streator v. Chrisman, 182 Ill. 215, where it was held, that although a person passing along a sidewalk may know it is out of repair, he may, notwithstanding such knowledge recover for a personal injury occasioned by a defective walk, if he uses ordinary and reasonable care. If the testimony of appellant's witnesses as to the disposition and habits of the mare was true, it tended to charge the decedent with actual notice of such disposition and habits. There was no lack of evidence to warrant giving the instructions.

Appellant's criticism of the fifteenth instruction, given at the request of appellee, arises out of a confusion of the doctrines of assumed risk and contributory negligence. The instruction properly imposed the burden upon appellant to show that the decedent did not assume the risk of the injury which resulted in his death. It has no relation to the issue of contributory negligence.

By the twenty-fourth instruction, given at the instance of appellee, the court informed the jury that as a matter of law no officer or stockholder of the appellee corporation was a competent witness to testify on its behalf, when called by or on its behalf. The instruction is inaccurate as applied to an officer of appellee corporation, not also a stockholder, and

should have been refused for that reason, and for the further reasons that it is abstract in form and is not based upon any evidence in the record. The instruction could not, however, have misled the jury to the prejudice of appellant.

It is further urged that the verdict should be set aside because of the improper conduct of one Roger Sullivan, who, during the direct examination of a witness for appellant when counsel had asked the witness a leading and suggestive question, said: "You are doing this all the time, and it is pretty near time it stopped. This is a job put up by a band of fellows over there." The witness thereupon said: "This is not a job, Mr. Sullivan." Counsel for appellant interposed no objection to the language, but the court on its own motion said: "Those remarks will be stricken out, and they will be disregarded by the jury." The connection, if any, which Roger Sullivan sustained to the litigation is not disclosed by the record, but we are disposed to think the language used by him taken in connection with the statement of the witness in reply was and they will be disregarded by the jury." The connec-failure of counsel for appellant to interpose any objection to the language used by Sullivan, or enter any protest as to his conduct, is significant that they did not then consider the colloquy harmful to their client. The incident does not call for a reversal of the judgment.

It is finally urged that the trial court improperly overruled appellant's motion for a new trial upon the ground of newly discovered evidence, and because certain of the servants or agents of appellee had corruptly prevented appellant from procuring the testimony of a certain witness.

We have carefully considered the affidavits filed in support of such motion, together with the testimony of witnesses heard by the trial court upon the issues raised by said motion, and find nothing therein which should have moved the court to set aside the verdict

and grant a new trial. The record discloses that during the trial of the case, after several witnesses for appellant had been examined, counsel for appellant was aware of the absence of some witnesses whom he desired to examine, and thereupon counsel for appellee proposed to consent to a continuance and re-trial of the case, which proposal counsel for appellant refused to accept and act upon.

There is no substantial error in the record and the judgment is affirmed.

*Judgment Affirmed.*